UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| MICHAEL W. DEARMAN,<br><br>  Plaintiff,<br>v.<br><br>NANCY A. BERRYHILL, Acting<br>Commissioner of Social Security,<br><br>  Defendant. | Case No. 2:15-cv-01447-PAL<br><br>**ORDER**<br><br>(Mot. Reversal/Remand – ECF No. 22)<br>(Cross-Mot. Remand – ECF No. 28) |

This matter involves Plaintiff Michael W. Dearman's appeal and request for judicial review of the Acting Commissioner of Social Security, Defendant Nancy A. Berryhill's final decision denying his claim for disability insurance benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401–33, and claim for supplemental security income under Title XVI of the Act, 42 U.S.C. §§ 1381–83.[1] This case is referred to the undersigned magistrate judge for a determination and entry of final judgment pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. *See* Reference Order (ECF No. 30).

## **BACKGROUND**

I. **PROCEDURAL HISTORY**

On October 21, 2008, Dearman filed applications for a period of disability insurance benefits under Title II and supplemental security income under Title XVI. AR 26.[2] In both

---
[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to the Federal Rules of Civil Procedure and the Social Security Act, the court substitutes Nancy A. Berryhill for Carolyn W. Colvin as the defendant. *See* Fed. R. Civ. P. 25(d) (allowing the automatic substitution of a successor to a public officer who is a party to an action but ceases to hold office while the action is pending); 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

[2] "AR" refers to the Administrative Record (ECF No. 20), a certified copy of which was filed under seal on the court's docket and delivered to the undersigned upon the Commissioner's filing of her Answer.

1

applications, he alleged disability beginning December 17, 2008, at the age of 41. *Id*. Dearman claimed he was unable to work because of back and neck pain and seizures. *Id*. The Social Security Administration denied Dearman's applications initially and on reconsideration. *Id*.

Administrative law judge ("ALJ"), Craig Ellis, held a hearing on November 5, 2010, where Dearman appeared with counsel. *Id*. At the hearing, counsel claimed Dearman was disabled because of degenerative disc disease, osteoarthritis, and seizure disorder. AR 60. In a decision dated March 1, 2011, the ALJ found that Dearman was not disabled. AR 26–34. Dearman requested review of the ALJ's decision by the Appeals Council, AR 21–22, but the decision became final when the Appeals Council denied review. AR 1–6.

On September 19, 2012, Dearman filed a complaint in federal court, seeking judicial review of the adverse decision pursuant to 42 U.S.C. § 405(g). *See Dearman v. Colvin*, 2:12-cv-01642-JAD-CWH. The parties stipulated to remand the matter to the Social Security Administration on August 5, 2013. The court granted the parties' stipulation entering an order requiring:

> Upon remand, the Office of Disability Adjudication and Review will remand the case to an [ALJ] and direct him or her to: (1) further evaluate the severity of the Plaintiff's mental impairments in accordance with 20 CFR 404.1520a and 416.920a; (2) reassess Plaintiff's maximum residual functional capacity with further evaluation of the medical opinions of record, including but not limited to the opinions of Jerrold Sherman, M.D., and Richard Cestkowski, D.O.; (3) further evaluate Plaintiff's subjective complaints; (4) if necessary, obtain vocational evidence to determine whether Plaintiff can make an adjustment to other work that exists in significant numbers in the national economy; (5) if necessary, conduct further proceedings necessary to determine if drug addiction or alcoholism is a contributing factor material to the determination of disability in accordance with 20 CFR 404.1535, 416.935 and SSR 13-2p.

AR 598–607.

On remand, the Commissioner appointed ALJ David Gatto. AR 553–70. The ALJ held a second hearing on January 29, 2015. AR 531. Counsel appeared on behalf of Dearman, but Dearman was not present, and counsel was unaware of his whereabouts. *Id*. The ALJ accepted testimony from an impartial vocational expert, and Dearman's counsel also questioned the expert. *Id*. On May 22, 2015, the ALJ issued an unfavorable decision. AR 531–543. Dearman timely filed the current action on July 29, 2015.

Dearman has filed a Motion for Reversal and/or Remand (ECF No. 22) seeking reversal of the Commissioner's final decision and an order for the payment of benefits. The Motion asserts there are no issues of triable fact and Dearman is entitled to judgment as a matter of law. The Commissioner filed a Cross-Motion for Remand and Response (ECF Nos. 28, 29) pursuant to Sentence Four of 42 U.S.C. § 405(g). The Commissioner requested that Dearman stipulate to a voluntary remand of this case to conduct further administrative proceedings. However, Dearman would not stipulate to remand, and the Commissioner therefore filed a cross-motion to remand for re-evaluation of the medical opinion evidence.

The court has reviewed the record and considered Dearman's Motion, the Commissioner's Cross-Motion and Response, and Dearman's Reply (ECF No. 29). For the reasons explained, the court denies Dearman's Motion and grants the Commissioner's Cross-Motion.

## DISCUSSION

### II. APPLICABLE LAW

#### A. Judicial Review of Disability Determinations

Federal district courts review administrative decisions in social security benefits cases under 42 U.S.C. § 405(g). However, judicial "review of social security determinations is limited." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). After an ALJ has held a hearing and the decision is final, § 405(g) allows a disability claimant to seek judicial review of an adverse decision by filing a lawsuit in a federal district court within the district where the claimant lives. The statute authorizes the court to enter "a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

The ALJ's findings of fact are conclusive if they are supported by "substantial evidence." 42 U.S.C. § 405(g). The court may reverse the decision "only if the ALJ's decision was not supported by substantial evidence in the record as a whole or if the ALJ applied the wrong legal standard." *Shaibi v. Berryhill*, 883 F.3d 1102, 1106 (9th Cir. 2017). "Substantial evidence means more than a mere scintilla, but less than a preponderance. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Trevizo v. Berryhill*, 871 F.3d

664, 674 (9th Cir. 2017). To determine whether the findings are supported by substantial evidence, a court "must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th Cir. 2014).

"For highly fact-intensive individualized determinations like a claimant's entitlement to disability benefits, Congress 'places a premium upon agency expertise, and, for the sake of uniformity, it is usually better to minimize the opportunity for reviewing courts to substitute their discretion for that of the agency'." *Treichler*, 775 F.3d at 1098 (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 621 (1966)). Thus, courts must "leave it to the ALJ to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record." *Id.* (citing 42 U.S.C. § 405(g)). The ALJ's findings must be upheld if they are supported by inferences reasonably drawn from the record. *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2003). "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Trevizo*, 871 F.3d at 674–75.

**B. Disability Evaluation Process**

A five-step sequential evaluation process is used to determine whether a claimant is disabled and eligible for benefits:

> First, the agency must consider the claimant's current work activity. Second, the agency must consider the medical severity of the claimant's impairments. Third, the agency must determine whether the severity of those impairments is sufficient to meet, or medically equal, the criteria of an impairment listed in three of the Social Security Act's implementing regulations, published at 20 C.F.R. §§ 404.1520(d), 404.1525–26. Fourth, the agency determines whether the claimant can perform past relevant work in light of the claimant's residual functional capacity. Fifth, the agency assesses whether the claimant can make an adjustment to other work that exists in significant numbers in the national economy, based on the claimant's residual functional capacity.

*Shaibi*, 883 F.3d at 1106 (citing 20 C.F.R. § 404.1520(a)). " 'The claimant carries the initial burden of proving a disability in steps one through four'." *Id.* (quoting *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). If the claimant establishes an inability to continue his or her

past work with specific medical evidence, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work. *Shaibi*, 883 F.3d at 1106.

**III. THE ALJ'S DECISION**

Here, the ALJ followed the five-step process and issued an unfavorable decision (the "Decision"). AR 531–543.

### A. Steps One Through Three

At step one, the ALJ found that Dearman had not engaged in substantial gainful activity ("SGA") since December 17, 2008, the alleged onset date. AR 534. At step two, the ALJ found that Dearman had the severe impairments of (i) alcohol abuse, (ii) alcohol-related seizures, and (iii) degenerative disc disease, and (iv) degenerative disc disease (*i.e.*, two small protruded discs) in the cervical spine. *Id*. He also considered the severity of several other conditions but found them to be non-severe. AR 534–35.

At step three, the ALJ found that Dearman's impairments, including the substance abuse disorder, met section 12.09 of the Listings. AR 535. The ALJ found that Dearman has: (i) a marked restriction in activities of daily living; (ii) marked difficulties in social functioning; (iii) marked difficulties in concentration, persistence, or pace; and (iv) four or more episodes of decompensation. AR 535. With regard to activities of daily living, the Decision states that Dearman was apparently homeless and has few daily activities other than drinking alcohol. *Id*. The ALJ found that treating records consistently describe Dearman as "disheveled and smelling of alcohol." *Id*. As to social functioning, the ALJ determined that Dearman has been involved in multiple altercations as a result of his alcohol abuse. *Id*. (citing AR 1753–1887).[3] With regard to concentration, persistence or pace, medical records documented numerous emergency room admissions to multiple hospitals for alcohol intoxication. *Id*. (citing AR 1383–1461, 1553–1598, 1677–1746, 1888–2191). The ALJ noted that many of the emergency room admissions indicate

---

[3] The ALJ also stated that Dearman had suffered numerous injuries due to falling or fighting while intoxicated. AR 535 (citing AR 704–722, 1783–1887, 2138–91 (contusions, lacerations, abrasions); AR 1462–1552, 1639–76, 1888–2137 (closed head injuries); AR 1747–52 (back strain); AR 2138–91 (fractured left humerus)). The ALJ found that Dearman received treatment for these conditions on an emergent basis without evidence of follow-up, in most cases. AR 535. What follow-up did occur was provided during subsequent emergency room visits for problems related to acute intoxication. *Id*.

an altered mental status, secondary to alcohol intoxication. *Id*. Likewise, regarding episodes of decompensation, medical record documents many hospital admissions for acute alcohol intoxication. Accordingly, the ALJ found that the "Paragraph B" criteria were satisfied. *Id*. (citing 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"), 20 C.F.R. §§ 404.1520(d), 404. 416.920(d); SSR 13-2p, 78 Fed. Reg. 1139 Feb. 20, 2013) (policy ruling addressing evaluation of cases involving drug addiction and alcoholism ("DAA")).[4]

With regard to Dearman's substance abuse, the ALJ determined that, if Dearman stopped the substance abuse, the remaining limitations would cause more than a minimal impact on Dearman's ability to perform basic work activities. AR 536. Therefore, Dearman would continue to have a severe impairment or combination of impairments. *Id*. The ALJ found that Dearman would still be limited due to his seizure disorder and musculoskeletal impairments but there was no evidence to suggest limitation as to mental functioning in the absence of alcoholism. *Id*. However, the ALJ found that if Dearman stopped the substance abuse, he would not have an impairment or combination of impairments that meets or medically equals any of the impairments in the Listings. AR 537.

**B. Step Four – RFC**

The fourth step requires an ALJ to determine whether a claimant has the residual functional capacity ("RFC") to perform his or her past relevant work ("PRW"). 20 C.F.R. §§ 404.1520(f), 416.920(f). To answer this question, an ALJ must first determine a claimant's RFC. 20 C.F.R. §§ 404.1520(e), 416.920(e). RFC is a function-by-function assessment of a claimant's ability to do physical and mental work-related activities on a sustained basis despite limitations from impairments. SSR 96-8p, 61 Fed. Reg. 34474 (July 2, 1996). In making this finding, an ALJ must consider all the relevant evidence such as symptoms and the extent to which they can be reasonably be accepted as consistent with the objective medical evidence and other evidence. 20 C.F.R. §§ 404.1529, 416.929; SSR 96-4p, 61 Fed. Reg. 34488 (July 2, 1996); SSR 96-7p, 61 Fed. Reg.

---

[4] SSRs are the Social Security Administration's official interpretations of the Act and its regulations. *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1224 (9th Cir. 2009); 20 C.F.R. § 402.35(b)(1). "SSRs do not carry the 'force of law,' but they are binding on ALJs nonetheless." *Bray*, 554 F.3d at 1224. SSRs are entitled to some deference as long as they are consistent with the Act and related regulations. *Id*. at 1223.

6

34483 (July 2, 1996). An ALJ must also consider opinion evidence in accordance with the requirements of 20 C.F.R. §§ 404.1527 and 416.927 as well as SSR 96-2p, 61 Fed. Reg. 34489 (July 2, 1996); SSR 96-5p, 61 Fed. Reg. 34471 (July 2, 1996); and SSR 06-3p, 71 Fed. Reg. 45593 (Aug. 9, 2006).

After considering the entire record, the ALJ concluded that if Dearman stopped the substance abuse, he would have the RFC to "perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that he could not climb ladders or ropes or scaffolds, and could occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs." AR 538. In making this finding, the ALJ "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and the other evidence" based on applicable regulations and policies. *Id*. He also considered opinion evidence. *Id*. The ALJ found that if Dearman stopped the substance abuse, his medically determinable impairments could reasonably be expected to cause his alleged symptoms. AR 541. However, the ALJ determined that Dearman's testimony at the first hearing concerning the intensity, persistence, and limiting effect of those symptoms were not entirely credible. *Id*. For reasons he explained at length, the ALJ found Dearman's subjective allegations and testimony regarding the limiting effects of the impairments were not entirely credible, and the ALJ therefore gave them little weight overall. AR 538-541.

**C. Step Four – Ability to Perform PRW**

Once an ALJ has determined a claimant's RFC as an initial consideration at step four, an ALJ utilizes the RFC assessment to determine whether a claimant can perform his or her PRW. 20 C.F.R. §§ 404.1520(f), 416.920(f). PRW means work a claimant performed within the last 15 years, either as the claimant actually performed it or as it is generally performed in the national economy. 20 C.F.R. § 404.1560(b). In addition, the work must have lasted long enough for a claimant to learn the job and to perform it as SGA. 20 C.F.R. §§ 404.1560(b), 404.1565, 419.960(b), 416.965. If a claimant has the RFC to perform his or her past work, then an ALJ makes a finding that a claimant is not disabled.

The Department of Labor publishes the Dictionary of Occupational Titles (DOT), which provides "detailed physical requirements for a variety of jobs." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1230 n.3 (9th Cir. 2009) (quoting *Massachi v. Astrue*, 486 F.3d 1149, 1153 n.8 (9th Cir. 2007)). The ALJ and/or a vocational expert utilizes the DOT in determining whether a claimant, given his RFC, can perform his PRW. *Id.* (citing 20 C.F.R. § 404.1560(b)(2)).

At step four in the Decision, the ALJ concluded that if Dearman stopped the substance abuse, he would be unable to perform his past relevant work as a cook, building maintenance repairman, fast food restaurant cook, and a laborer. AR 542 (citing AR 558–561). The vocational expert testified that a hypothetical individual with Dearman's RFC would not be able to complete the demands of his PRW, which all required a medium level of exertion. AR 558–61. The ALJ accepted this testimony, found Dearman was unable to perform his PRW because it required a moderate level of exertion, and continued to step five. AR 542.

**D. Step Five**

Step five requires an ALJ to determine whether a claimant can perform any other work considering his or her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g). If he or she can do other work, then an ALJ makes a finding that a claimant is not disabled. Although a claimant generally continues to have the burden of proving disability at this step, the Commissioner is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do. *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012) (citing 42 U.S.C. § 423(d)(2)(A)).

The Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2, are commonly known as the "Grids," and specific sections are referred to as a Medical-Vocational rule. The Grids aid the ALJ in the analysis at step five for cases that cannot be evaluated on medical considerations alone. The Grids consist of three tables that each represent a different physical exertional level: sedentary, light, and medium work. *Id*. Each table also presents the vocational factors Congress has identified as important: age, education, and work experience. If a claimant can perform all or substantially all of the exertional demands at a given exertional level, the Grids direct a conclusion of either "disabled" or "not disabled" depending upon the claimant's

specific vocational profile. SSR 83-11, 1983 WL 31252 (Jan. 1, 1983). When a claimant cannot perform substantially all of the exertional demands of work at a given level of exertion and/or has non-exertional limitations, the Grids are used as a framework for decision-making. *See* SSR 83-12, 1983 WL 31253 (Jan. 1, 1983); SSR 83-14, 1983 WL 31254 (Jan. 1, 1983).

At step five, the ALJ determined that if Dearman stopped the substance abuse, he would not have the RFC to perform the full range of light work. AR 542. However, the ALJ found Derman could perform jobs that exist in significant numbers in the national economy, considering his age, education, work experience, and RFC. *Id.* On the alleged date of disability, Dearman was 48 years old, which categorized him as a "younger individual," age 18–49. *Id*. He has the equivalent of a high school education and is able to communicate in English. *Id*. The ALJ found that transferability of job skills was not was not material to the determination, because using the Grids as a framework supported a finding that he was not disabled, whether or not he had transferable job skills. *Id*.

The ALJ found that, if Dearman stopped the substance abuse, he would not have the RFC to perform the full range of light work. AR 542. To determine the extent of erosion of the unskilled light occupational base caused by the limitations that would remain, the ALJ asked the vocational expert, Ronald Hatakeyama, a hypothetical question regarding whether jobs exist in the national economy for an individual with Dearman's age, education, work experience, and RFC. AR 542–43, 558–561. Mr. Hatakeyama testified that the individual would be able to perform the requirements of three representative jobs:

| Job Title | DOT Code | Exertional Level | Skill Level | Approximate Number of Jobs Existing |
|---|---|---|---|---|
| Office Helper | 239.567-010 | Light | Unskilled | 200,000 nationally |
| Assembler | 706.684-022 | Light | Unskilled | 200,000 nationally |
| Mail Clerk | 209.687-026 | Light | Unskilled | 150,000 nationally |

AR 561–62.

The ALJ found that Mr. Hatakeyama's testimony in response to the ALJ's hypothetical was consistent with the DOT and the jobs Hatakeyama identified existed in significant numbers in the national economy. AR 542-543. Based on Hatakeyama's testimony, the ALJ determined that

if Dearman stopped the substance abuse, he was capable of making a successful adjustment to work that exists in significant numbers in the national economy. *AR 543* A finding of "not disabled" was, thus, appropriate under the framework of Medical-Vocational Rule 202.21. *Id.*

Under the regulations (20 C.F.R. §§ 404.1520(g), 404.1535, 416.920(g), and 416.935), if substance abuse is a contributing factor material to the determination of disability, a claimant is not disabled within the meaning of the Social Security Act. Because the ALJ found that Dearman's substance abuse disorder was a contributing factor material to the determination of disability, the ALJ found Dearman was not disabled within the meaning of the Social Security Act at any time from the alleged onset date to the date of his decision.

### IV. THE PARTIES' POSITIONS ON APPEAL

#### A. Dearman's Motion to Reverse and Remand

Dearman seeks reversal of the ALJ's decision on the grounds that no issues of triable fact exist, and he is entitled to judgment as a matter of law. Pl.'s Mot. (ECF No. 22). He argues the ALJ failed to offer any reason, let alone a specific and legitimate reason, for rejecting some of Dr. Sherman's limitations. He contends that "the totality of Dr. Sherman's medical opinions would render" Dearman incapable of work. Dr. Sherman opined that Dearman has the ability to sit/stand/work for six hours in an eight-hour work day, frequently lift ten pounds, occasionally lift twenty pounds, but should not be required to do repetitive forward bending at the waist, repetitive neck motion, or long downward gazing, citing AR 232. Dearman points out that the ALJ gave the most weight to Dr. Sherman's opinion and argues that the ALJ's ultimate RFC assessment mirrors the doctor's opinion almost in its entirety. However, the ALJ failed to provide any reason, let alone a specific and legitimate reason, for accepting or rejecting Dr. Sherman's additional cervical limitations.

Dearman also maintains the ALJ erred in his hypothetical question to the vocational expert, Ronald Hatakeyama, which did not include the limitation that the individual would be unable to perform repetitive neck motion or long downward gazing. Dearman's counsel asked Mr. Hatakeyama a hypothetical that incorporated the RFC found by the ALJ, but also added the cervical limitations for repetitive neck motion, and long downward gazing consistent with Dr.

Sherman's opinions. AR 564–69. Mr. Hatakeyama testified that there were no jobs that such a hypothetical individual could perform in the national economy. *Id*. Dearman asserts that the combined expert opinions of Dr. Sherman and Mr. Hatakeyama's establish that there are no jobs that Dearman can do that exist in significant numbers in the national economy.

Because the record in this case is fully developed, the only remaining question is the appropriate remedy. The case was initially remanded to reassess Dr. Sherman's opinions. AR 598–600. The Commissioner has already had "two bites of the apple" and the ALJ unequivocally accepted Dr. Sherman's opinions. Further administrative proceedings would serve no useful purpose. Dearman's severe physical impairments render him disabled, and, citing SSR 13-2p, Dearman argues his battle with alcoholism does not render his physical disability immaterial. The court should therefore remand for an award of benefits. In the alternative, the court should remand "for the proper consideration of that medical evidence under the prevailing legal paradigm deriving from the Social Security Act."

**B. The Commissioner's Cross-Motion**

The Commissioner seeks voluntary remand to conduct additional administrative proceedings, to reevaluate Dr. Sherman's opinion and obtain additional vocational expert evidence to consider all of Dearman's limitations. Cross-Mot. & Resp. (ECF Nos. 28, 29). On initial remand, the ALJ was ordered to reconsider Dr. Sherman's opinion and the implications of that opinion. The ALJ accepted Dr. Sherman's opinion but did not specifically reference the neck limitations on repetitive motion and downward gazing. The Commissioner points out that the ALJ mentioned "occasional postural limitations," but argues "it is unclear whether this was a reference to the restrictions on repetitive motion and downward gazing." *Id*. at 5 (citing AR 540). Dr. Sherman reported both positive and negative findings in his consultative examination report. The ALJ could have reasonably rejected Dr. Sherman's restrictions against repetitive motion and downward gazing as contradicted by and inconsistent with Dr. Sherman's examination findings. The ALJ's decision noted Dr. Sherman reported that Dearman's neck appeared normal. However, it is unclear whether the ALJ rejected the neck limitations based on inconsistencies in Dr.

Sherman's report. Out of an abundance of caution, the Commissioner agreed to remand to clarify the ALJ's assessment of Dr. Sherman's opinion.

During the second administrative hearing, the ALJ asked the vocational expert, Mr. Hatakeyama, to assume an individual of Dearman's age, education, and vocational background, and assessed RFC. AR 561–62. In response, Hatakeyama testified that such an individual could not perform Dearman's PRW but could perform other jobs. *Id*. On cross-examination, Dearman's counsel asked Mr. Hatakeyama to change the profile to assume the individual would also be restricted from repetitive motion of the neck and downward gazing, as indicated in Dr. Sherman's opinion. AR 568. Mr. Hatakeyama testified that that such a person could not perform the light or sedentary jobs he previously identified. *Id*. The Commissioner argues that, if the ALJ rejected Dr. Sherman's limitations in light of the benign medical findings, the ALJ properly rejected this hypothetical question and the vocational expert's response. Cross-Mot. & Resp. at 7 (citing *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1173–74 (9th Cir. 2008)). The Commissioner maintains that because of the "aggressive and leading manner of the attorney's questioning" it is unclear whether the vocational expert really felt that there were no other jobs Dearman could perform. Therefore, it would be appropriate to obtain additional vocational expert testimony to re-evaluate Dearman's ability to perform other work.

Lastly, the Commissioner urges the court to follow the "ordinary remand rule." *Id*. at 9 (citing *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985)). Dr. Sherman's report included certain normal findings and only assessed mild to moderate restriction of movement in Dearman's cervical spine. The Commissioner claims the ALJ's treatment of Dr. Sherman's cervical limitations could be interpreted in various ways, and the ambiguity regarding the doctor's opinion affects the RFC finding as well as the vocational expert testimony at step five. These discrepancies represent genuine issues of material fact. Cross-Mot. & Resp. at 10–11 (citing *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099–1100 (9th Cir. 2014)). Dearman's argument, even if accepted, does not warrant the rare remedy of a remand for immediate payment, but further proceedings to resolve any ambiguity.

### C. Dearman's Reply

The reply argues that the ALJ is not a medical expert and may not substitute his own interpretation of the medical evidence for the opinion of medical professionals. Dearman maintains the record is fully developed and further administrative proceedings would serve no useful purpose. The ALJ failed to provide legally sufficient reasons for rejecting Dr. Sherman's opinion on Dearman's cervical limitations. The vocational expert testified that accepting Dr. Sherman's opinion as true, Dearman would be unable to do any work. Therefore, the record as a whole does not create serious doubt that Mr. Dearman is disabled, and the court should reverse the ALJ's decision and order a payment of benefits.

### V. ANALYSIS AND DECISION

The court finds that the ALJ's decision did not explicitly resolve conflicting opinions and testimony with regard to the degree of Dearman's functional limitations. This is a highly fact-intensive, individualized determination that Congress has deferred to agency expertise. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 661 (1996). These individualized determinations of a claimant's entitlement to disability benefits enhance uniformity and minimize the opportunity for reviewing courts to substitute their discretion for that of the agency. *Id.* It is the ALJ's duty "to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record." *Id.* (citing 42 U.S.C. § 405(g) (noting that the Commissioner's findings shall be conclusive as to any facts supported by substantial evidence); *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

Dearman seeks remand for an award of benefits arguing that there is no serious doubt in this fully-developed record that the ALJ relied on the opinions of Dr. Sherman concerning his restrictions, and the vocational expert testified that with these limitations, Dearman could not perform work that exists in substantial numbers in the national economy. Dearman does not challenge any other of the ALJ's findings, including his credibility findings. Accordingly, the following summary outlines Dr. Sherman's opinion and the portion of the Decision discussing the doctor's opinion.

Dearman was examined by Dr. Sherman on March 27, 2009. *See* Orthopedic Examination & Evaluation, AR 229–34. Dearman presented with complaints of neck, mid and low back pain. AR 229. Physical examination revealed a 5'11", 166-pound alert man who entered the examining room with a normal gait using no cane, brace, or assistive device to ambulate. AR 230. He easily walked on his heels and toes and performed a 100%-normal squatting maneuver without difficulty. *Id*. He gained the examining room table easily and sat up from a lying position without difficulty easily bringing fingertips to the level of his ankles. *Id*.

Dr. Sherman stated that Dearman's neck appeared "100%-normal." *Id*. Dearman complained of pain with light touch all about the posterior neck and the thoracic and lumbar spine. AR 230–31. There was no muscle spasm in the neck or spine. *Id*. Dr. Sherman found no atrophy, normal reflexes, a normal grip strength, and a full range of motion in multiple joints in the upper and lower extremities. *Id*. Dr. Sherman further reported normal straight-leg raising testing. AR 231. With regard to the cervical spine, Dearman forward flexed and extended 20 degrees and right/left rotated 50 degrees with the complaint of posterior neck pain at the extremes of these ranges of motion. AR 230. Forward flexion of the lumbar spine was reduced at 80 degrees. AR 231. Dr. Sherman provided the following impression:

> 1. Lumbar spine with severe disc space narrowing at the L5-S1 level with complaints of back pain but without neurologic deficit.
> 2. Mild wedging of the thoracic seven vertebra without mechanical or neurologic deficit but persistent back pain complaints.
> 3. Cervical spine with mild to moderate multi-level osteoarthritis without neurologic deficit.

AR 231. The doctor opined:

> Mr. Dearman is able to sit, stand and walk for six hours during the course of an eight-hour day and does not require a cane, brace or assistive device to ambulate. He can frequently lift 10 pounds and occasionally lift 20 pounds. *He should not be required to do repetitive forward bending at the waist, repetitive neck motion, or long downward gazing.* He is unrestricted regarding the use of the upper extremities for reaching, pushing, pulling, grasping, or fine manipulation activities with the hands.

AR 232 (emphasis added).

The ALJ specifically discussed Dr. Sherman's report in the Decision. AR 540–41. The Decision states that Dr. Sherman's report demonstrated "no atrophy, normal reflexes, no spasm in

14

the cervical or lumbar spine, a normal grip, and a full range of motion in multiple joints in the upper and lower extremities." AR 540 (citing AR 229–234). The doctor "observed only a modest reduction of motion in the cervical spine," and reported "normal straight-leg raising testing." *Id*. The ALJ specifically pointed to Dr. Sherman's report indicating that Dearman's forward flexion was "only mild reduced at 80 degrees," stating that "90 degrees is normal." *Id*. The ALJ further noted Dr. Sherman's findings that Dearman "can sit six of eight hours, stand and/or walk six of eight hours, and lift 10 pounds frequently and up to 20 pounds occasionally *with occasional postural limitations*." AR 540 (emphasis added).

The ALJ also compared the findings of both consultative examiners, Dr. Sherman and Richard A. Cestkowski, D.O. AR 540; *see* AR 436–48 (Evaluation by Dr. Cestkowski, dated Dec. 15, 2010). After considering all of the musculoskeletal findings, the ALJ gave Dr. Sherman's opinion more weight than that of Dr. Cestkowski. AR 540. The ALJ found that Dr. Sherman's opinion was "better supported by, and more consistent with the overall record." AR 540. Although the ALJ found that the greater preponderance of the evidence was consistent with Dr. Sherman's conclusions, the ALJ further restricted Dearman to no climbing of ladders ropes or scaffolds as a seizure precaution. AR 540–41 (citing SSR 96-6p); AR 538 (finding that Dearman had the RFC to perform light work "except that he could not climb ladders or ropes or scaffolds, and could occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs").

Reviewing the records as a whole, the court simply cannot determine whether the ALJ considered but rejected the opinions of Dr. Sherman in making his RFC assessment with respect the additional cervical limitations, that is that Dearman should not be required to do repetitive neck motion or long downward gazing. The ALJ determined that if Dearman stopped substance abuse, he would have the RFC to perform light work except that he could not climb ladders or ropes or scaffolds, and could occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs. AR 538. The ALJ comprehensively addressed the reasons for his RFC findings at AR 538-541. He discusses the opinions of Dr. Richard Cestkowski and explained why Dr. Cestkowski's unremarkable examination did not support the limitations the doctor assessed.

The ALJ also clearly relied heavily on Dr. Sherman's examination and findings. The opinion expressly stated that the ALJ gave "more weight to the opinion of Dr. Sherman as it is better supported by, and more consistent with, the overall record as discussed at length above" than the opinion of Dr. Cestkowski. AR 540. Although finding "that the greater preponderance of the evidence is consistent" with the conclusions in Dr. Sherman's report, the ALJ further restricted Dearman to no climbing of ladders, ropes or scaffolds as a seizure precaution, citing SSR 96-6p.

In the portion of the decision that explains why the ALJ rejected the opinions of Dr. Cestkowski, the ALJ cited extensively to findings from physical examinations in Dearman's treating records which failed to support Dr. Cestkowski's opinion. AR 540. The ALJ cited multiple medical records from Sunrise Hospital, Valley Hospital, and North Vista Hospital. The ALJ noted numerous findings in these records by treating physicians finding that Dearman had a full range of motion of the cervical and lumbar spine and extremities. These records also contain multiple findings that Dearman was experiencing no spinal tenderness and had normal muscle strength. The ALJ may have intended to rely on these same negative musculoskeletal findings to reject the Dr Sherman's cervical limitations as inconsistent with findings made by treating physicians during Dearman's multiple hospital admissions. The ALJ may also have intended to convey that the cervical limitations Dr. Sherman found were inconsistent with his own physical examination of Dearman. However, he did not explicitly state the reasons for not incorporating Dr Sherman's cervical limitations in his RFC assessment. The decision simply fails to address at all whether the ALJ accepted or rejected Dr. Sherman's opinion that Dearman was limited to repetitive neck motion or downward gazing, and if so, why.

The ALJ assesses a claimant's RFC based on all the relevant evidence in the record. *Laborin v. Berryhill*, 867 F.3d 1151, 1153 (9th Cir. 2017) (quoting 20 C.F.R. § 416.945(a)(1). "The ALJ is responsible for translating and incorporating clinical findings into a succinct RFC." *Rounds v. Comm'r of Soc. Sec. Admin.*, 807 F.3d 996, 1106 (9th Cir. 2015) (citing *Stubbs-Danielson v. Astrue*, 539 F.3d at 1174). The vocational expert's opinion has no evidentiary value if the assumptions in the hypothetical are not supported by the record. *Stubbs-Danielson*, 539 F.3d

at 1174. The ALJ may improperly reject opinions that do not include specific functional limitations. *Wilson v. Berryhill*, 732 F. Appx. 504, 506 (9th Cir. 2018) citing *Stubbs-Danielson*, 539 F.3d at 1174) (unpublished).

At step five, the ALJ must consider four factors to consider whether a claimant can work—age, education, work experience, and RFC. 20 C.F.R. § 404.1520(g). Dearman's motion for reversal and remand does not explicitly state that the ALJ made an erroneous RFC finding. Rather, he claims the ALJ committed reversible error by failing to incorporate Dr. Sherman's neck limitations into the hypothetical he posed to the vocational expert. The ALJ certainly considered and relied on Dr. Sherman's opinions in making his musculoskeletal findings. However, the opinion does not state whether the ALJ considered but rejected the cervical limitations as inconsistent with the treating records, or Dr. Sherman's own examination.

Here, the ALJ's hypothetical did not incorporate Dr. Sherman's findings that Dearman was also restricted in repetitive neck motion and long downward gazing. Dearman concedes that an ALJ "is not required to incorporate every facet of a doctor's opinion into the RFC" and that the RFC assessment is based on the entire record. However, the ALJ's opinion does not explain why he did not incorporate the cervical limitations into his RFC assessment. The ALJ's decision also does not address whether he considered the vocational expert's testimony in response to questioning by counsel for Dearman which did incorporate Dr. Sherman's cervical limitations.

Additionally, the ALJ's hypothetical to the vocational expert incorporated the ALJ's RFC assessment that Dearman could perform light work as defined by the DOT and the Social Security Regulations with occasional climbing of stairs or ramps. AR 464-469. However, the ALJ's decision found that, if Dearman stopped the substance abuse, he would have the RFC to perform light work, except that he *could not* climb ladders or ropes of scaffolds. AR 538.[5] The ALJ hypothetical to the vocational expert continued to include the limitation of "occasional postures to include balancing, stooping, kneeling, crouching, and crawling. All of these would be occasional." The vocational expert testified that a hypothetical individual with those limitations could not

---

[5] Neither side raised this issue in their briefs.

perform light work but could perform other work that exists in significant numbers in the national economy.

The court may only review the reasons the ALJ provided in the disability decision. *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (quoting *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014)). Thus, an ALJ's findings should be stated with enough specificity so that a court does not speculate as to the basis of the findings when determining if the findings are supported by substantial evidence. *See Burrell v. Colvin*, 775 F.3d 1133, 1140–41 (9th Cir. 2014). Cursory findings of fact lacking explicit statements about what portions of evidence were accepted or rejected are not sufficient. *Lewin v. Schweiker*, 654 F.2d 631, 634 (9th Cir. 1981). An ALJ's findings should be comprehensive, analytical, and include a statement explaining the "factual foundations on which the ultimate factual conclusions are based." *Id.*; *see also Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) (an ALJ need not "discuss every piece of evidence" but must explain why significant or probative evidence was rejected).

"When the ALJ denies benefits and the court finds error, the court ordinarily must remand to the agency for further proceedings before directing an award of benefits." *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017) (citing *Treichler*, 775 F.3d at 1099). The Supreme Court has long held that "a judicial judgment cannot be made to do service for an administrative judgment," *SEC v. Chenery Corp.*, 318 U.S. 80, 88 (1943), when (i) "the record before the agency does not support the agency action, (ii) "the agency has not considered all relevant factors," or (iii) "the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it." *Fla. Power & Light*, 470 U.S. at 744. The Supreme Court instructs that "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Id*. "The Supreme Court has referred to this remand requirement as the 'ordinary remand rule'," and it "applies equally to Social Security cases." *Treichler*, 775 F.3d at 1099 (quoting *Gonzales v. Thomas*, 547 U.S. 183, 185 (2006)).

Federal courts have recognized, however, that "in appropriate circumstances courts are free to reverse and remand a determination by the Commissioner with instructions to calculate and award benefits." *Garrison v. Colvin*, 759 F.3d 995, 1019 (9th Cir. 2014) (collecting cases and

18

quoting 42 U.S.C. § 405(g)). "The three-part analysis for such conditions is known as the 'credit-as-true' rule." *Leon*, 880 F.3d at 1045 (citing *Garrison*, 759 F.3d at 1019). First, the court determines whether the ALJ failed to provide legally sufficient reasons for rejecting claimant testimony or medical opinion evidence. *Id*. (citing *Garrison*, 759 F.3d at 1020). Second, the court evaluates whether outstanding issues must be resolved before a disability determination can be made, and whether further administrative proceedings would be useful. *Id*. (citing *Treichler*, 775 F.3d at 1101). When the first two conditions are satisfied, the court may credit as true the discredited evidence "for the purpose of determining whether, on the record taken as a whole, there is no doubt as to disability." *Id*. "Courts have generally exercised this power when it is clear from the record that a claimant is entitled to benefits." *Garrison*, 759 F.3d at 1019; *Leon*, 880 F.3d at 1044 (the "credit-as-true rule" permits, but does not require, a direct award of benefits).

Because the ALJ did not address whether he accepted or rejected Dr. Sherman's opinion concerning Dearman's cervical limitations and provide an explanation the court may not speculate the court will remand for further administrative proceedings. The court denies Dearman's request for remand for an award of benefits because the court has a serious doubt whether Dearman is disabled based on the number of references in the AR to normal or near musculoskeletal findings made by treating physicians during Dearman's multiple hospital admissions.

For the reasons explained,

**IT IS ORDERED:**

1. The Clerk of Court shall SUBSTITUTE Nancy A. Berryhill for Carolyn W. Colvin as the defendant in this suit.
2. Plaintiff Michael W. Dearman's Motion for Reversal and/or Remand (ECF No. 22) is **DENIED**.
3. The Commissioner's Cross-Motion for Remand (ECF No. 28) is **GRANTED**.
4. The Commissioner's final decision in this matter is **REMANDED** for further proceedings consistent with this Order.
5. Upon remand, the Office of Disability Adjudication and Review will remand the case to an administrative law judge and direct him or her to: (1) reassess Dearman's

maximum residual functional capacity with further evaluation of the medical opinion of Jerrold Sherman, M.D.; and (2) if necessary, obtain vocational evidence to determine whether Dearman can make an adjustment to other work that exists in significant numbers in the national economy.

6. The Clerk of Court is instructed to enter judgment accordingly and close this case.

Dated this 28th day of September, 2018.

PEGGY A. LEEN
UNITED STATES MAGISTRATE JUDGE